Richard M. Garbarini (RG 5496)
GARBARINI FITZGERALD P.C.
250 Park Avenue 7th Floor
New York, New York 10177
Telephone: (212) 300-5358
Facsimile: (347) 218-9478

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x

BRYAN EICH, individually and on behalf of all
other similarly situated copyright holders,

                    Plaintiff,

           v.

APPLE INC.,

                    Defendant.

-----------------------------------------------------x

Index No.: 17-cv-9857

**ECF CASE**

**COMPLAINT AND JURY
DEMAND FOR DAMAGES FOR
COPYRIGHT INFRINGEMENT
AND UNDERPAYMENT OF
ROYALTIES**

       Plaintiff BRYAN EICH, by and through his attorneys at GARBARINI FITZGERALD

P.C., brings this Class Action Complaint and Jury Demand against defendant APPLE INC. based

on defendant's infringement of plaintiff's and the Putative Class' copyrighted musical works

pursuant to the Copyright Act and Copyright Revisions Act, 17 U.S.C. §§ 101 *et seq*. (the

"Copyright Act" or "Act"), and defendant's deliberate scheme to withhold royalties owed

plaintiff and a Putative Class of copyright holders that received royalties.

## <u>NATURE OF THE ACTION</u>

       1.       Plaintiff EICH own the publishing rights to two copyrighted albums of music

titled *Devil in Disguise* U.S. Copyright Registration No. SRu 925-601 and *Slreeping By A Wire*

U.S. Copyright Registration No. SRu 661-491, covering eighteen (18) musical recordings.  This matter is brought on behalf of plaintiff and a putative class of independent artist who own the publishing rights to their copyrighted recordings (the "Putative Class") to remedy defendant's systematic infringement, and theft of royalties.

2.      Defendant owns and operates a services called Apple Music (f/k/a Beats Music) which is a subscription interactive music streaming service subject to Section 115 of the Act. Because the preceding product was at all times during the Class Period defined as December 17, 2014 to the present, covered by Section 115 of the Act, defendant was required to serve a Notice of Intent to Obtain Compulsory License ("NOI"), in the form proscribed by 37 CFR § 201.18, prior to distribution, or within one month of making available, each of plaintiff's and the Putative Class' copyrighted recordings; defendant did not.

3.      Instead, during the Class Period defendant engaged in a systematic process of infringement by, inter alia: (i) making available and distributing plaintiff's and the Putative Class' recordings without first serving an NOI; (ii) deliberately deleting stream information to hide defendants systematic violation of plaintiffs exclusive rights under the Act; (iii) altering the streaming reports years after they were issued in order to hide the infringements; and, (iv) failing to serve some or all of the monthly and annual reports to conceal the infringements.

4.      The laundry list of frauds, and misdeeds, perpetrated by the defendant shocks the conscious.  Defendant systematically infringed the copyrighted recordings of plaintiff and the Putative Class, while simultaneously engaging in an illegal scheme to reduce its royalty obligations in violation of the Copyright Act.

**PARTIES**

5.      At all times material hereto, plaintiff BRYAN EICH ("EICH") was, and is, an individual and resident of Mineola.

6.      Upon information and belief, defendant APPLE INC. ("APPLE") is a California corporation with its principal place of business located at 1 Infinite Loop, Cupertino, California. During the Class Period, defendant has, inter alia: (1) failed to serve NOI's for all independent artists, (2) failed to pay and changed the royalties owed to plaintiff and the Putative Class.

**JURISDICTION AND VENUE**

7.      The jurisdiction of this Court is based upon 28 U.S.C. §§ 1331 and 1338 in that this controversy arises under the Copyright Act and Copyright Revision Act of 1976 (17 U.S.C § 101 et seq.). This action is a civil action over which this court has original jurisdiction.

8.      On information and belief, a substantial part of the facts of infringement complained of herein occurs or has occurred in this district, and defendant is subject to personal jurisdiction in this district because they maintain a headquarters in this district located at 401 W 14th St., New York, NY 10014.

9.      Personal jurisdiction over defendant is proper in this Court on the grounds that defendant, through its interactive web-based subscription service, caused the unlicensed distribution of the plaintiff's and the Putative Class' copyrighted recordings throughout the State of New York, including within this judicial district.

10.     This Court has personal jurisdiction over defendants pursuant to CPLR § 302 (New York's long-arm statute) due to their continuous and systematic business activities within New York as described below.  Defendant has conducted and do conduct business within New York.  Defendant, directly or through intermediaries (including distributors, retailers, and

others), ships, distributes, offers for sale, sells, and advertises products in the United States, and specifically to New York.  Defendant purposefully and voluntarily distributed and reproduced plaintiff's and the Putative Class' recordings in New York.

11.     Venue in this District is proper under 28 U.S.C. § 1391(b) and (c) and/or 28 U.S.C. § 1400(a).

12.     Plaintiff has the right to bring the within action pursuant to 17 U.S.C. § 501(b).

13.     The copyright in every musical composition at issue was registered in the United States Copyright Office. 17 U.S.C. §§ 409-412.

14.     Copies of each certificate issued by the U.S. Copyright Office to the named plaintiff with the U.S. Copyright Office is annexed and incorporated hereto respectively as **Exhibits 1.**

15.     Each of the plaintiff's copyrighted compositions was registered within three months of publication, or thirty days prior to the infringement, and satisfy the registration prerequisite under 17 U.S.C. § 412(c).

## CLASS ALLEGATIONS

16.     Plaintiff brings this action on behalf of himself and on behalf of all other similarly situated owners of the publishing a/k/a "mechanical" rights for registered musical compositions, which were distributed by defendant through its interactive streaming product on or after December 17, 2014.

17.     The Putative Class is comprised of and defined as follows:

> (a)     Plaintiff and a Putative Class of artists who are not subject to a blanket license and who own the publishing rights to their recordings, and submitted those recordings to defendant through a third party aggregator, and defendant elected to exploit the recordings on or after December 17, 2014 (the "Putative Class").

18.     This action may be properly brought and maintained as a class action because there is a well-defined community of interest in the litigation and the members of the proposed class are clearly and easily ascertainable and identifiable.

19.     The class for whose benefit this action is brought is so numerous that joinder of all class members is impracticable.  Plaintiff is informed and believe, and on that basis avers, that there are thousands of class members and that those class members can be readily ascertained from defendant's database files and records, and via discovery in this action.

20.     Upon information and belief, defendant has maintained records of the musical compositions they publish and/or distribute.

21.     The Putative Class members can be readily located and notified of this action.

22.     The claims of plaintiffs are typical of the claims of the members of the Putative Class, and their interests are consistent with and not antagonistic to those of the other Putative Class members they seek to represent.

23.     Plaintiff holds the rights to copyrighted musical compositions which defendant has reproduced and/or distributed on or after December 17, 2017.

24.     Plaintiff, and all members of the Putative Class, have sustained actual pecuniary loss and face irreparable harm arising out of defendants' continued infringement as complained of herein.

25.     Plaintiff has raised a viable copyright infringement claim of the type reasonably expected to be raised by members of the Putative Class, and will vigorously pursue those claims.

26.     If necessary, plaintiff may seek leave of the Court to amend this Complaint to include additional class representatives to represent the Putative Class or additional claims as may be appropriate.  Plaintiff is represented by experienced, qualified and competent counsel who is

committed to prosecuting this action.

27.     Common questions of fact and law exist as to all members of the class that predominate over any questions affecting only individual members of the class.

28.     These common legal and factual questions, which do not vary from class member to class member, and which may be deter0mined without reference to the individual circumstances of any class member include, without limitation, the following:

(a)     whether defendant reproduced, distributed or otherwise exploited plaintiff's and the Putative Class' copyrighted recordings via their interactive streaming or locker products on or after December 17, 2014;

(b)     whether defendant's distribution was licensed;

(c)     whether defendants served NOIs for each of the recordings on each independent artist prior to distribution;

(d)     whether defendant has an obligation to serve renewal NOIs every two-years;

(e)     whether defendant deleted stream data to hide its infringing activity to hide the infringements;

(f)     whether defendant failed to serve Monthly and Annual Statements of Account to conceal the infringements;

(g)     whether defendants failed to make the royalty calculations required in good faith and on the basis of the best knowledge, information and belief of the licensee at the time payment is due, and subject to the additional accounting and certification requirements of 17 U.S.C. 115(c)(5) and § 201.19;

(h)     whether defendant failed to provide an accurate list of every stream of sound recording that occurred in the digital music service in that month to these third party companies as well as reported free/part streams; and,

(i)     whether defendant's conduct is continuing, thereby entitling plaintiff and members of the Putative Class to injunctive or other relief.

29.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual litigation of the claims of all class members is

impracticable.

30.     The claims of the individual members of the class may range from smaller sums to larger sums, depending upon the number of infringements.   Thus, for those Putative Class members with smaller claims, the expense and burden of individual litigation may not justify pursuing the claims individually.  Even if every member of the class could afford to pursue individual litigation, which is highly unlikely in the independent artist community, the court system could not.

31.     It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, contradictory, or inconsistent judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.

32.     On the other hand, the maintenance of this action as a class action presents few management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each member of the class.

33.     Plaintiff anticipates no difficulty in the management of this action as a class action.

## **GENERAL FACTS**

34.     As a general proposition, a copyright confers on the owner the exclusive right to reproduce the copyrighted Composition.

35.     Absent a license from the copyright owner, which the owner is free to grant or deny, reproduction of the composition by another constitutes copyright infringement.

36.     When Congress enacted the Copyright Act of 1909, it was concerned that exclusivity with respect to musical compositions would give rise to "a great music monopoly." It therefore modified the principle of exclusivity in the case of nondramatic musical

Compositions by enacting a compulsory license provision which, in defined circumstances, imposed upon the copyright owner a license permitting the mechanical recording of the copyrighted song "on such media as a phonograph record or a piano roll."

37.    Although recording technology has changed since 1909, licenses to record musical compositions on such media continue to be called "mechanical licenses."

38.    The compulsory mechanical license concept was carried forward in Section 115 of the Copyright Act of 1976 which, generally speaking, permits one wishing to record a copyrighted nondramatic musical Composition to do so in the absence of the copyright owner's consent in exchange for payment of a statutory royalty.

39.    But the availability of compulsory mechanical licenses is dependent on the strict limitations of Section 115(b)(1) of the Act which requires in pertinent part that "[a]ny person who wishes to obtain a compulsory license under this section shall, before or within thirty days after making, and before distributing any phonorecords of the Composition, serve notice of intention to do so on the copyright owner."

40.    Under Section 115, those who seek to make and distribute reproductions of a musical Composition may obtain a license to do so by serving a NOI on the copyright owner, no later than thirty days after making, and before distributing, any phonorecords. See 17 U.S.C. § 115(b)(1).

41.    Once an entity has served the NOI, it must provide monthly and annual Statements of Account and pay the statutorily prescribed royalties on a monthly basis. 17 U.S.C. § 115(c)(5).

42.    The name and address of the owner of the publishing rights is readily ascertained from the third party aggregator who submits same with the recordings for review.

43.     If, for some reason, the name and address of the owner of a given composition cannot be readily identified from the submission records, or the public records of the Copyright Office, the user may file the NOI with the Copyright Office. See 17 U.S.C. § 115(b)(1).

44.     In that case, the user must pay a filing fee to the Copyright Office but does not need to deposit royalties. See 17 U.S.C. § 115(c)(1); 37 C.F.R. § 201.18(f)(3).

45.     The content and method of service of the notice are prescribed by statute and regulation. See 17 U.S.C. § 115(b); 37 CFR 201.18.  Defendants could have included all of the recordings submitted by each plaintiff or member of the Putative Publishing Class in a single NOI.

46.     The duration of the NOI is not proscribed by Rule or Regulation, consequently an industry standard 2 years is read-into the license.

47.     The tremendous power granted to defendants under Section 115 is balanced by the strict obligations regarding notice.  Defendant intentionally failed to adhere to its Section 115 obligations, while enjoying all of the benefits afforded by Section 115.

48.     Although the mechanical license is compulsory, specific rules must be followed to obtain the license under the law.

49.     While the Statute and supporting regulations are silent on a term, like duration, a reasonable duration is interposed based on industry practice.  Generally, licensing agreements have a two-year term, and that is the duration of a Section 115 license.

50.     With respect to accounting and royalties, the person or entity who obtains a compulsory license must make royalty payments, accompanied by a Monthly Statement of Account, to the copyright owner or authorized agent of the owner on or before the 21st day of each month for the preceding months sales and streaming records.

## Result of Failing to Obtain a Mechanical License

51.     When a work is distributed before a mechanical license is obtained, the owner(s) of the publishing rights to the musical compositions (generally the artists) do not get paid for the reproduction and distribution of their music.  For publishers and songwriters, like plaintiff, whose songs are not played on the radio, the royalties earned from streaming revenue is often substantially the largest part of their income.

52.     Moreover, reproducing a song without a license to the publishing is copyright infringement which may not be cured after the fact by attempting to obtain a compulsory license. Section 115 further provides that "failure to serve or file the notice required by clause [1] forecloses the possibility of a compulsory license and, in the absence of a negotiated license, renders the making and distribution of phonorecords actionable as acts of infringement . . .".

53.     Once a work has been distributed without service of an NOI, the work has been infringed, and the later service of an NOI does nothing to cure that infringement.

54.     United States Senate Report confirms:

> Of course, a digital transmission service would be liable for any infringing digital phonorecord delivery it made in the absence of a compulsory license or the authorization of the musical work copyright owner: Senate Report No. 104- 128, S. Rep. 104-128 (1995) at 27 (emphasis added).

55.     The United States Senate Report further states:

> If a record company grants a license under its rights in the sound recording only, and does not grant a mechanical license under the copyright in the musical work embodied in the sound recording, **it is the transmission service's responsibility to obtain a license under the musical work copyright**. Senate Report No. 104-128, S. Rep. 104-128 (1995) at 31.

## AGGREGATORS

56.     Aggregators like TuneCore, Distro Kid, or CD Baby, function exactly like a record label for independent artists.

57.     When defendant's predecessor Beats Music went live in 2012, aggregators like TuneCore submitted most of their catalogue for review.  The artists' recordings were submitted for review, and they had no way of knowing whether defendant elected to include their works in defendant's product unless they receive an NOI.

58.     Each of the aggregators make it very clear that they do not convey the publishing rights.

59.     After receipt of the master audition recordings from the aggregator, defendant may elect to exploit the masters, or reject one or all of the sound recordings due to "technical or editorial specifications".

60.     If defendant elects to exploit the recordings, it is obligated to serve an NOI within 30 days, and before distribution.

## FACTS SPECIFIC TO DEFENDANT

61.     Defendant owns and operate various music streaming product now called Apple Music which is an interactive subscription streaming subject to Section 115.  Apple Music was formerly known as Beats Music.

62.     On or about August 1, 2014, defendant purchased the assets and liabilities of a company called Beats Music, which was then renamed Apple Music.

63.     Beats did not serve NOI's on independent artists as a matter of corporate policy.

64.     Defendant also failed to serve NOIs on independent artists.

65.     Defendant was at all times aware of this fact.  At the time of purchase there was a

lawsuit against Beats for the very matters named here.

66.     On August 11, 2017, defendant's outside counsel was again informed of the facts brought herein, including the failure to serve NOIs.

67.     Defendant was contacted directly, twice, of the facts brought herein, including the failure to serve NOIs.

68.     Defendant elected to continue to stream plaintiff's and the Putative Class' copyrighted recordings.

69.     This is clearly intentional conduct which subjects defendant to enhanced statutory damages under the Act.

## THE INFRINGEMENTS

70.     Plaintiff and the Putative Class submitted their recordings to defendant or its predecessor in interest Beats through a third- party aggregator like TuneCore or CD Baby.

71.     Defendant or its processor in interest had the right to accept the recordings or reject the recordings.

72.     If the Defendant or its predecessor in interest elected to accept the recordings, they obligated to serve an NOI on each owner of the publishing rights prior to distribution.

73.     Defendant and its predecessor in interest, however, failed to serve timely NOIs for substantially all of the works of independent artists in their music library.

74.     CD Baby submitted plaintiff's recordings to defendant's predecessor in interest in or around October 2014.  Plaintiff was unaware his recordings were submitted for review.

75.     The only way plaintiff would have learned his recordings were submitted is if defendant served an NOI.

76.     In August 2017, plaintiff, through counsel, contacted defendant and informed it

that no NOIs were ever served.  This was followed by multiple notices directly to defendant.

77.     Defendant continued to stream plaintiff's recordings despite the fact that it was on notice there was no license.

## DEFENDANTS FAILED TO SERVE STATEMENTS OF ACCOUNT

125.     Defendant failed to file statutorily required Monthly Reports.

126.      Defendant was obligated to serve a "Monthly Statement of Account", every month following a month in which any recording is streamed. See 17 U.S.C. § 115(c)(5). Defendant failed in every month relevant to this Complaint to serve a Monthly Statement of Account on plaintiff.

127.      On information and belief, defendants have not served a Monthly Statement of Account on any Putative Plaintiff in any month covered by this Complaint.

128.     The service of the Monthly Statement of Account on a copyright owner may be accomplished by means of service on either the copyright owner or an agent of the copyright owner with authority to receive Statements of Account on behalf of the copyright owner. See 37 CFR § 201.19(a)(4).

125.     Defendant was statutorily obligated to serve "[e]ach Annual Statement of Account . . . on the copyright owner or the agent with authority to receive Annual Statements of Account on behalf of the copyright owner to whom or which it is directed by mail or by reputable courier service on or before the 20th day of the third month following the end of the fiscal year covered by the Annual Statement."

126.     Defendant did not serve any Annual Statements on any of the named plaintiff. Upon information and belief, Defendants did not serve an Annual Statement of Account on any independent publisher/artist for any year.

## DEFENDANT FAILED TO PAY ROYALTIES

127.    On examination, some of the named plaintiffs streaming royalties are listed as $0.000000.

128.    This obviously means defendant has failed to include, and/or changed the revenue owed for streams.

### FIRST CLAIM FOR RELIEF
### COPYRIGHT INFRINGEMENT
### (On Behalf of Plaintiff and the Putative Class)

129.    Plaintiff and the Putative Class incorporate the allegations contained in the preceding paragraphs as if set forth at length here.

130.    Defendant has, without a "mechanical" license from plaintiff or the Putative Class, reproduced and distributed plaintiff's copyrighted compositions through its interactive web-based subscription streaming services.

131.    It cannot be disputed that the plaintiff and the Putative Class have valid, registered copyrights and own the publishing rights to their copyrighted compositions.  Defendant reproduced and offered the copyrighted compositions for streaming, including permanent and temporary digital download, without a license for the publishing rights, thus infringing plaintiff's and the Putative Class' rights under Section 115 of the Copyright Act.  Irreparable injury is presumed here as plaintiff and the Putative Class have established a prima facie case of copyright infringement.

132.    Even after defendant was put on notice in a previous action in this Court and by express notice from plaintiff, defendant elected to continue to reproduce and publicly perform and/or publicly distribute copyrighted compositions.

133.    The making or the distribution, or both, of all copyrighted compositions without the payment of proper royalties is actionable as acts of infringement under section 501 and fully subject to the remedies provided by sections 502 through 506 and 509.

134.     Each time plaintiff and Putative Class were deprived of their statutory royalty entitlement, e.g., by non-payment of royalties, a distinct harm was done to plaintiff's and the Putative Class' property interest.

135.     Defendant's predatory conduct was clearly intentional within the meaning of 504(c)(2) for purposes of enhancing statutory damages.  Defendant knew its their actions constituted an infringement each time it failed to serve an NOI or make a royalty payment.

136.     Defendant's knowledge may also be inferred from its conduct including the reckless disregard of the plaintiff's and Putative Class' rights (rather than actual knowledge of infringement), which suffices to warrant award of the enhanced damages.

137.     Every time defendant materially altered documents to cover its illegal activity, it demonstrated the clear knowledge of the import of its acts.

138.     As a direct and proximate result of each of the defendant's infringement, plaintiff and the Putative Class have incurred damages, as described more fully above. Pursuant to C.F.R. § 385, plaintiffs and the Putative Class are entitled to a "per stream" statutory royalty rate of $.01 for interactive web-based streaming services like Defendants.

139.     Plaintiff and the Putative Class may also elect to recover statutory damages pursuant to 17 U.S.C. § 504(c)(2) for willful infringement of up to $150,000, but not less than $30,000, for each registration which has been infringed.

## SECOND CLAIM FOR RELIEF
## FAILURE TO PAY ROYALTIES
### (On Behalf of Plaintiffs and the Putative Class)

140.     Plaintiff and the Putative Class reallege and incorporates by reference each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set for that length herein.

141.     As described herein, defendant systematically shorted the publishing royalties owed to plaintiff and the Putative Class.

142.     Plaintiff and the Putative Class members have been damaged, and defendant has been unjustly enriched, in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself, and all other persons similarly situated, respectfully prays for relief against defendant as follows:

1.     Certify this matter as a class action;

2.     Enter an order appointing plaintiff as class representative and plaintiff's counsel as class counsel;

3.     Enter judgment in favor of plaintiff and each class member;

4.     Enter injunctive and/or declaratory relief as is necessary to protect the interests of plaintiff and the Class (17 U.S.C. § 502), including enjoining defendant from continued copyright infringement and violations of the relevant provisions of the Copyright Act;

5.     A temporary, preliminary, and permanent injunction enjoining and restraining defendant and its respective agents, servants, directors, officers, principals, employees, representatives, subsidiaries and affiliates, companies, successors, assigns, and those acting in concert with them or at their direction, from further violations;

6.     Injunctive relief that requires defendant to pay for the services of a third party auditor to identify the owners of all works reproduced and/or distributed by defendant despite defendant's failure to first obtain a mechanical license prior to reproducing and/or distributing the copyrighted works, and further requiring

defendant to remove all such unlicensed tracks from its services until it obtains proper licenses for them;

7.      Restitution of defendant's unlawful proceeds, including defendant's gross profits;

8.      Award compensatory damages to plaintiff and the Putative Class in an amount to be ascertained at trial;

9.      Award statutory damages to plaintiff and the Putative Class according to proof, including but not limited to all penalties authorized by the Copyright Act (17 U.S.C. §§ 504(c)(1), 504(c)(2));

10.     Award reasonable attorneys' fees and costs (17 U.S.C. § 505);

11.     Award plaintiff and each Putative Class member pre- and post-judgment interest to the extent allowable;

12.     Award plaintiff and the Putative Class all unpaid royalties; and,

13.     Award such other and further relief that the Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated: December 17, 2016                     GARBARINI  FITZGERALD P.C.

                                            By:_____
                                                 Richard M. Garbarini (RG 5496)